[No. E053797. Fourth Dist., Div. Two. Jan. 7, 2013.]

DWIGHT R., Plaintiff and Appellant, v.
CHRISTY B., Defendant and Respondent.

698

700

## COUNSEL

Law Offices of Shawn A. McMillan, Shawn A. McMillan and Stephen D. Daner for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Rima M. Badawiya, Matthew B. Stucky and Brittany H. Bartold for Defendant and Respondent.

## OPINION

**KING, J.—**

## I. INTRODUCTION

Plaintiff Dwight R. appeals from an order granting defendant Christy B.'s special motion to strike his third cause of action against Christy for conspiring with state actors to violate his and his two minor daughters' federal civil rights. (42 U.S.C. § 1983.)[1] We affirm the order striking the section 1983 claims as a strategic lawsuit against public participation or "SLAPP." (Code Civ. Proc., § 425.16.)

Christy is a licensed marriage and family therapist and mandated reporter of known or suspected child abuse or neglect. (Pen. Code, §§ 11165.7, subd. (a)(21), 11166.) In his complaint, Dwight alleges that Christy conspired with his former mother-in-law, L.S., and state actors, including several San Bernardino County social workers, to falsely accuse him of sexually abusing his five-year-old daughter R1. Dwight maintains that Christy unduly persuaded or "coached" R1 to draw illicit pictures of herself and Dwight in bed together, and made a knowingly false report that Dwight was sexually abusing R1.

Christy's alleged conspiracy with L.S. and the social workers occurred shortly after the family court allowed Dwight to have unsupervised visits

---

[1] All claims arising under title 42 United States Code section 1983 will be referred to as section 1983 claims.

with R1 and her younger sister, R2. Christy's mandated report resulted in an investigation by child protective services and juvenile dependency proceedings for the girls. The dependency proceedings were dismissed after the juvenile court found no evidence to support allegations against Dwight. (Welf. & Inst. Code, § 300.) Dwight claims that Christy's conspiracy with state actors deprived him and the girls of their federal constitutional rights to familial association and against unlawful seizure.

■ We conclude that the section 1983 claims are based on acts in furtherance of the rights of free speech or petition, specifically actions preparatory to or in anticipation of official proceedings, including an official investigation by child protective services and juvenile dependency proceedings. (Code Civ. Proc., § 425.16, subd. (e)(2).) We also conclude that Dwight did not demonstrate a probability of prevailing on the claims.

## II. BACKGROUND

### A. *Facts and Procedural History*

In September 2008, Dwight and his former wife N. initiated divorce proceedings. In November, they met separately with a family court mediator to work out a temporary agreement for custody and visitation rights to their two daughters, R1 and R2, then ages five and three, respectively. N. expressed no concern during the mediation that Dwight had sexually abused the girls, and the mediator's report of the mediation did not mention any concern of sexual abuse. Through the mediator, Dwight and N. agreed that N. would have temporary sole legal and physical custody of the girls, Dwight would visit the girls three days each week, and Dwight's parents would supervise the visits. The agreement did not provide any provision for overnight visits.

During a second mediation on February 24, 2009, Dwight sought unsupervised, overnight visits with the girls. At the time of the February 24 mediation, Dwight was living with his parents, was self-employed, and set his work schedule according to work availability. He believed his visits with the girls had been going well, and he did not wish to further impose on his parents to supervise the visits.

At the February 24 mediation, the mediator again spoke separately with Dwight and N. N. wanted the paternal grandparents to continue supervising the visits. She acknowledged that the girls were enjoying the visits and would likely enjoy overnight visits, but she believed the visits were going well only because the paternal grandparents were involved. She told the mediator she did not trust Dwight's judgment, but she expressed no concern that Dwight

had or would sexually abuse the girls, and the mediator's February 24 report does not mention any concern of sexual abuse. Dwight and N. did not reach an agreement at the February 24 mediation, but the mediator recommended to the family court that Dwight have unsupervised visits with the girls, including overnight visits on alternating weekends.

During a March 16, 2009, order to show cause hearing in the family court, N. accused Dwight for the first time of sexually abusing the girls. The family court rejected the accusation as unfounded, and adopted the mediator's recommendation that Dwight have unsupervised visits, including overnight weekend visits. Even though the court authorized unsupervised visits, after the March 16 hearing Dwight made certain his parents were present during all of his visits with the girls as a precaution against N.'s false accusations of sexual abuse.

Dwight visited the girls on Tuesday and Thursday, March 17 and 19, 2009, in the presence of his parents. These daytime visits "went smoothly and uneventfully, without any problems." The first overnight visit took place on Friday, March 20, through Sunday, March 22, 2009, at the paternal grandparents' home. The girls had never before spent the night there, and the paternal grandparents were present throughout the visit.

Shortly after the March 20 to March 22 weekend visit, Dwight discovered that R1 had had her first therapy session with Christy on Friday, March 20. Before March 20, neither R1 nor R2 had ever seen a therapist.

Dwight alleges that N. and her mother, L.S., arranged R1's March 20 therapy session with Christy. N. and the girls lived with L.S., and L.S. had for many years worked as a "professional paraeducator" for the Los Angeles County Office of Education, specializing in "extremely disturbed children," including victims of sexual abuse. Dwight alleges that L.S. had long-standing professional relationships with Christy and San Bernardino County social workers, and conspired with Christy and the social workers to falsely accuse him of sexually abusing the girls. In their professional capacities, Christy, L.S., and the social workers are mandated reporters of suspected child abuse or neglect. (Pen. Code, §§ 11165.7, subd. (a)(9), (15), (21), 11166, subd. (a).)

As a licensed marriage and family therapist, Christy received client referrals from the San Bernardino County Superior Court. In a declaration in support of her anti-SLAPP motion, Christy claims that N. contacted her around February 2009 and expressed concern that R1 was exhibiting behavioral problems, including bed-wetting. Christy told N. that she did not typically work with families who were still working with the courts, but she

would be willing to work with N. after the court finalized the girls' visitation schedule with Dwight. Around March 20, 2009, N. again contacted Christy, told her the visitation schedule had been settled with the family court and that R1 was still exhibiting behavioral problems, including "acting clingy and whiny."

Christy acknowledges that she had her first therapy session with R1 on March 20, 2009. She claims that, in keeping with her custom and practice for new patients, she instructed R1 to draw pictures of "a tree, a house, herself and her favorite animal." This helped her connect with and learn more about the child. Christy claims that, "[b]ased on the pictures [R1] drew, as it pertained to her father's house and sleeping arrangements she shared with her father, and based upon my professional opinion, I had a reasonable suspicion that there may be sexual abuse."

Christy denies Dwight's allegations that she facilitated, instructed, or guided R1 "into making certain statements and drawings, to conjure up sexual abuse allegations" against Dwight. She also denies conspiring with anyone, including N., L.S., or any social workers, to violate Dwight's or the girls' federal civil rights. She claims the only action she took concerning R1 was notifying child protective services of her suspicion as a mandated reporter.

On Tuesday, March 24, 2009, Christy completed a mandated report of her suspicion that Dwight was sexually abusing R1 (Pen. Code, § 11166, subd. (a)), and notified child protective services of her suspicion. Christy did not immediately report her suspicion because she did not believe R1 was "in any immediate danger." She understood that N. had custody of R1, and believed that R1 would be staying with N. over the weekend of March 20 to March 22. Christy continued to treat R1 on a weekly basis until February 2010.

In his declaration opposing Christy's motion, Dwight claims that on March 30, 2009, Christy stated: " 'I [(Christy)] asked if she [(R1)] could draw me a picture of daddy [(Dwight)] and her [(R1)] in bed.' " Dwight does not say to whom or under what circumstances Christy made the statement, but according to Dwight, Christy's act of "coaching" R1 to draw pictures of herself in bed with Dwight was "nothing more than impermissible coaching of [R1] to make false sexual abuse allegations against [Dwight]."

Dwight adduces the declaration of R.L. Hanlon, Ph.D., a licensed psychologist and marriage and family therapist, who states he has "never come across a reliable or valid protocol, standard, or guideline that allows anyone to make reliable or valid inferences about the dynamic meaning of children's

drawings." Dr. Hanlon is critical of Christy for "the extremely poor method" she used in obtaining information from R1, for her "utterly unfounded assumptions about what that information (the drawings) signified," and for assuming that Dwight was sexually abusing R1 without attempting to "rule out who else in [R1's] environment might have molested her." Dr. Hanlon states "[t]he sequence of events" Christy describes "in her contact with [R1] . . . strongly suggests that [she] approached her evaluation of [R1] from a mental set of 'confirmatory bias,' " that is, of viewing all information in a light that confirmed her preconceived idea or hypothesis that Dwight was sexually abusing R1.

In a declaration signed on March 26, 2009, and submitted to the juvenile court, L.S. claimed she recommended that N. take both R1 and R2 to see a counselor "sometime before March 20, 2009." According to L.S., N. took R1 to see Christy on March 20 "because of behavioral issues [R1] was having at home." R1 wet her bed every night during the week of March 16. L.S. also claimed that both R1 and R2 were exhibiting signs and made statements to L.S. indicating that Dwight had sexually abused them—both before and after the weekend of March 20 to March 22.

Around the end of March 2009, San Bernardino County social workers instituted juvenile dependency proceedings for the girls. During an April 3 interview with social workers, R1 denied that anyone had ever touched her inappropriately. The juvenile court did not sustain any dependency allegations against Dwight, including any sexual abuse allegations, and dismissed the dependency proceedings in February 2010.

In December 2010, Dwight, acting for himself and as guardian ad litem for the girls, filed a second amended complaint against the County of San Bernardino (the County), the San Bernardino County Department of Children's Services (DCS), four San Bernardino County social workers (the social worker defendants), and Christy.[2] Christy, along with the social worker defendants, are named as defendants in the third cause of action for section 1983 violations.

In the third cause of action, Dwight alleges that Christy violated his and the girls' federal civil rights by conspiring with L.S. and the social worker defendants (1) to detain the girls in violation of his and the girls' Fourth Amendment rights to be free from unreasonable seizures, and (2) to interfere

---

[2] The complaint alleges causes of action for false imprisonment (first), intentional infliction of emotional distress (second), federal civil rights violations based on unlawful seizure and familial association (third), additional federal civil rights violations against the County and DCS based on their practices and procedures (fourth), child abduction (fifth), and declaratory relief (sixth).

with his and the girls' Fourteenth Amendment due process rights to familial association. More specifically, Dwight alleges that Christy "voluntarily collaborated with and participated in the various actions undertaken by the social worker defendants to ensure the removal" of the girls from his care based on false accusations and fabricated evidence of child sexual abuse. (Capitalization omitted.)

Christy filed a special motion to strike Dwight's section 1983 claims, as alleged in his third cause of action, under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.) The trial court granted the motion, and Dwight appeals.

### B. *Reporter Immunities Under California Law*

■ California has a strong interest in preventing and remediating child abuse and neglect. (*Storch v. Silverman* (1986) 186 Cal.App.3d 671, 676 [231 Cal.Rptr. 27].) To better enable authorities to prevent ongoing instances of child abuse and neglect, the Legislature enacted a comprehensive reporting scheme, currently known as the Child Abuse and Neglect Reporting Act (the Reporting Act). (Pen. Code, § 11164 et seq.)

The Reporting Act designates as "mandated reporters" certain professionals who work in positions where child abuse and neglect is likely to be detected. (Pen. Code, § 11165.7, subd. (a).) In addition to teachers, physicians, and other professionals whose work regularly brings them in contact with children, mandated reporters include social workers (*id.*, subd. (a)(15)), family and child counselors, such as Christy (*id.*, subd. (a)(21)), and "[a]n employee of a county office of education . . . whose duties bring the employee into contact with children on a regular basis," such as L.S. (*id.*, subd. (a)(9)).

■ Subject to exceptions not applicable here, a mandated reporter has a duty to make a report to an agency specified in Penal Code section 11165.9,[3] "whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." (Pen. Code, § 11166, subd. (a); see *Watson v. County of Santa Clara* (N.D.Cal. 2007) 468 F.Supp.2d 1150, 1155–1156.) A report of suspected child abuse by a mandated reporter is known as a "mandated report." (Pen. Code, § 11166, subd. (a)(3).) A mandated reporter who fails to make a mandated report "as required" by Penal Code section 11166 is guilty of a misdemeanor. (Pen. Code, § 11166, subd. (c).) Given their obligation under penalty of criminal prosecution to report all known and

---

[3] Agencies specified in Penal Code section 11165.9 include police and sheriff's departments and county welfare departments.

reasonably suspected instances of child abuse or neglect, mandated reporters have unqualified, absolute immunity from criminal and civil liability "for any report required or authorized"[4] to be made under the Reporting Act, "even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment." (Pen. Code, § 11172, subd. (a).)

■ A mandated reporter is also absolutely immune from civil and criminal liability for "conduct giving rise to the obligation to report [including] the collection of data, or the observation, examination, or treatment of the suspected victim or perpetrator of child abuse," and even for knowingly or recklessly making a false report or falsifying evidence of child abuse or neglect. (*Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1223, 1217–1218 [242 Cal.Rptr. 312]; see *Storch v. Silverman, supra,* 186 Cal.App.3d at p. 681; *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1400 [261 Cal.Rptr. 437]; *Thomas v. Chadwick* (1990) 224 Cal.App.3d 813, 820 [274 Cal.Rptr. 128] (*Chadwick*).) As explained in *Storch*: "The [Reporting Act] is designed to encourage the reporting of child abuse to the greatest extent possible to prevent further abuse. Reporters are required to report child abuse promptly and they are subject to criminal prosecution if they fail to report as required. Accordingly, absolute immunity from liability for *all* reports is consistent with that scheme." (*Storch v. Silverman, supra,* at pp. 678–679, italics added.)

In contrast to mandated reporters, voluntary reporters—persons who voluntarily report known or suspected instances of child abuse or neglect—have *qualified* immunity from civil or criminal liability "as a result of any report authorized" under the Reporting Act. (Pen. Code, § 11172, subd. (a).) Voluntary reporters are immune, "unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report." (*Ibid.*)

### III. DISCUSSION

#### A. *Overview of Code of Civil Procedure Section 425.16*

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free

---

[4] Penal Code section 11166.05 describes situations when a mandated reporter "may" but is not required to make a report of suspected child abuse: "Any mandated reporter who has knowledge of or who reasonably suspects that a child is suffering serious emotional damage or is at a substantial risk of suffering serious emotional damage, evidenced by states of being or behavior, including, but not limited to, severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, may make a report to an agency specified in Section 11165.9."

speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713].) Code of Civil Procedure section 425.16, the anti-SLAPP statute, allows a party to bring a special motion to strike a meritless SLAPP suit at an early stage of the litigation. (*Rusheen v. Cohen, supra,* at pp. 1055–1056; *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443 [122 Cal.Rptr.3d 73] (*Gerbosi*).)

Code of Civil Procedure section 425.16 prescribes a two-step process for courts to follow in determining whether a cause of action constitutes a SLAPP. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703]; Code Civ. Proc., § 425.16, subd. (b)(1).)[5] The court first determines whether the defendant has made a threshold showing that the challenged cause of action "aris[es] from" protected speech or petition activity. (*Navellier v. Sletten, supra,* at p. 88.) This showing is made if the "act" underlying the challenged cause of action fits one of the four categories of protected activities described in Code of Civil Procedure section 425.16, subdivision (e).[6] (*Navellier v. Sletten, supra,* at p. 88.)

If the court finds the defendant has met this threshold burden, it then determines whether the plaintiff has demonstrated a probability of prevailing on the merits of the plaintiff's claim. (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 88–89.) To meet this burden, the plaintiff must demonstrate " ' "that the complaint is both legally sufficient and supported by a . . . prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.] [¶] Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech

---

[5] Code of Civil Procedure section 425.16, subdivision (b), provides: "(b) [¶] (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

[6] Subdivision (e) of Code of Civil Procedure section 425.16 defines an "act . . . in furtherance of [a] person's right of petition or free speech" (Code Civ. Proc., § 425.16, subd. (b)(1)) as including: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89.)

We review an order granting or denying a special motion to strike de novo. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657 [123 Cal.Rptr.3d 301].) That is, we independently determine whether the challenged cause or causes of action arise from protected activities, and if so whether the plaintiff has demonstrated a probability of prevailing on the claims. (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1084 [70 Cal.Rptr.3d 614].)

B. *The Section 1983 Claims Are Based on Protected Activities*

Dwight claims Christy did not meet her burden of demonstrating that the section 1983 claims against her are based on protected free speech or petition activities. (Code Civ. Proc., § 425.16, subds. (b)(1), (e).) We disagree.

■ A cause of action "aris[es] from" protected speech or petition activities if the act underlying the claim is "*itself*" an act in furtherance of the right of free speech or petition. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695]; see Code Civ. Proc., § 425.16, subd. (b)(1).) In determining whether a claim is based on protected activity, we disregard the labeling of the claim and examine its " 'principal thrust or gravamen,' " or " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 [99 Cal.Rptr.3d 805].) We consider the pleadings together with the supporting and opposing affidavits adduced on the motion, "stating the facts upon which the liability . . . is based." (Code Civ. Proc., § 425.16, subd. (b)(2); see *Navellier v. Sletten, supra*, 29 Cal.4th at p. 89.)

■ The protected activities described in subdivision (e)(2) of Code of Civil Procedure section 425.16 include statements or writings made "in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (See *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198 [46 Cal.Rptr.3d 41, 138 P.3d 193].) These protected activities include acts " 'preparatory to or in anticipation of' " the bringing of an action or other official proceeding. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

The core injury-producing conduct underlying the section 1983 claims against Christy is her alleged conspiracy with social workers and others to falsify evidence that Dwight was sexually molesting R1, her improper

coaching of R1 to draw illicit pictures of herself and Dwight, and her mandated report to child protective services of her allegedly false suspicion that Dwight was sexually abusing R1. As such, the section 1983 claims are based on acts preparatory to or in anticipation of official proceedings, namely, an investigation by child protective services of Christy's suspicion that Dwight was sexually abusing R1, and possible juvenile dependency proceedings for the girls. (Code Civ. Proc., § 425.16, subd. (e)(2).)

Dwight points out that he did not allege that Christy made a mandated report of her suspicion that Dwight was sexually abusing R1. Instead he alleged that *L.S.* made the mandated report of *Christy's* suspicion of the sexual abuse. This attempt to parse Christy's alleged coaching and conspiracy activities from her act of making the mandated report is unavailing. Christy adduced uncontroverted evidence that she is a mandated reporter and that she, not L.S., reported her suspicion to child protective services that Dwight was sexually abusing R1. (Pen. Code, § 11166.)

In any event the point is a red herring. Even if L.S. or someone other than Christy made the report, Christy's other alleged acts of conspiring with L.S. and social workers to fabricate evidence that Dwight was sexually abusing R1 and "coaching" R1 to draw illicit pictures of herself and Dwight nonetheless constitute protected activities in anticipation of official proceedings. (Code Civ. Proc., § 425.16, subd. (e)(2); see *Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1115.)

Relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299, 324 through 328 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) and *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703 and 704 [131 Cal.Rptr.3d 171] (*Lefebvre*), Dwight further argues that Christy's alleged coaching and conspiracy activities are not protected activities under Code of Civil Procedure section 425.16 because they were unlawful as a matter of law. This argument fails because there is no uncontroverted evidence that Christy's alleged coaching or conspiracy activities, as Dwight characterizes them, were unlawful.

◼ Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute. (*Flatley, supra*, 39 Cal.4th at p. 317 ["[Code of Civil Procedure] section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law . . . ."]; *Lefebvre, supra*, 199 Cal.App.4th at p. 704 [Code Civ. Proc., § 425.16 "does not protect activity that, because it is illegal, is not in furtherance of constitutionally protected speech or petition rights."].) But when the defendant's assertedly protected activity *may or may not be* unlawful, the defendant may invoke the anti-SLAPP statute *unless* the activity is unlawful as a matter of law. (*Gerbosi, supra*, 193 Cal.App.4th at p. 446.)

An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful. (*Ibid.*; *Flatley, supra*, at p. 317.)

Here, Christy does not concede that she engaged in any unlawful activities. Nor is there any uncontroverted evidence that her coaching and conspiracy activities, as Dwight characterizes them, were unlawful as a matter of law. In her declaration in support of her motion, Christy denies unduly persuading or coaching R1 to draw illicit pictures of herself and Dwight, or engaging in any conspiracy with social workers, L.S., or others to falsify evidence that Dwight was sexually abusing R1. Dwight's mere allegation that Christy engaged in unlawful coaching and conspiracy activities is insufficient to render her alleged actions unlawful as a matter of law and outside the protection of Code of Civil Procedure section 425.16.

In contrast to the section 1983 claims, *Flatley* and *Lefebvre* involved claims based on activities that were indisputably unlawful as a matter of law and therefore unprotected under the anti-SLAPP statute. The plaintiff in *Flatley* sued an attorney for civil extortion and related causes of action based on the attorney's alleged criminal attempt to extort money from the plaintiff by threatening to publicize the plaintiff's alleged rape of the attorney's client—unless the plaintiff paid the attorney and his client a seven-figure settlement. (*Flatley, supra*, 39 Cal.4th at pp. 305–311.) In opposing the attorney's anti-SLAPP motion, the plaintiff adduced uncontroverted evidence that the attorney had engaged in the alleged extortion attempt. (*Id.* at pp. 328–329 ["[the attorney] did not deny that he sent the letter nor did he contest the version of the telephone calls set forth in [the plaintiff's attorneys'] declarations . . . ."].) Based on the uncontroverted evidence that the attorney attempted to extort money from the plaintiff, the court in *Flatley* concluded that the attorney made the extortion attempt, which was "illegal as a matter of law," and therefore not a protected form of speech under Code of Civil Procedure section 425.16. (*Flatley, supra*, at pp. 317–320.)[7]

*Lefebvre* also involved undisputed unlawful activity—the filing of a false police report—which uncontroverted evidence showed was in fact a false

---

[7] The plaintiff's complaint against the attorney in *Flatley* was not based on the attorney's communications preparatory to or in anticipation of bringing a civil action against the plaintiff, because the attorney's threat to file a civil action against the plaintiff for the alleged rape was merely incidental to the attorney's attempt to extort money from the plaintiff by threatening to publicize the alleged rape. (*Flatley, supra*, 39 Cal.4th at pp. 305, 325–333 & p. 334 (conc. opn. of Werdegar, J.) ["That plaintiff alleges the extortion scheme also included threats to sue [citation] does not necessarily mean the action 'arises from' defendant's litigation-related activities. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 930–931 [116 Cal.Rptr.2d 187] [mere presence of allegations in city's cross-complaint that contractor extorted money, inter alia, by filing or threatening lawsuits did not render it a SLAPP].)"].)

police report. The plaintiff sued his former wife and another defendant for malicious prosecution and related claims, alleging that they conspired to falsely accuse the plaintiff of threatening to kill his former wife and their children. (*Lefebvre, supra,* 199 Cal.App.4th at p. 700.) The plaintiff was prosecuted for making a criminal threat but was acquitted and later found factually innocent. (*Ibid.*) Moreover, the former wife *admitted* she filed "an illegal, false criminal report." (*Id.* at p. 705.) Thus, as a matter of law, the former wife could not show that her former husband's claims against her and her codefendant were based on protected speech or petition activities. (*Ibid.*)

Additional cases further illustrate the critical distinction between a plaintiff's bare allegations of unlawful activities and uncontroverted evidence of unlawful activities. In *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563 [31 Cal.Rptr.3d 368], the defendant's *allegedly* false report to school officials that the plaintiff abused the defendant's children was protected activity, notwithstanding the plaintiff's allegation that the report was merely " 'an attempt to manufacture corroboration' " for the defendant's false accusations of abuse. (*Id.* at pp. 1569–1570.) In *Siam,* as here, there was no uncontroverted evidentiary showing that the defendant's report was false. Similarly, in *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502 [65 Cal.Rptr.3d 641], the defendant's allegedly false report to police that the plaintiff inappropriately touched her was deemed protected activity because there was no uncontroverted evidentiary showing that the report was false. Finally, in *Gerbosi,* the plaintiff's complaint against a law firm for invasion of privacy and related claims was based on the firm's undeniably unlawful activity of "wiretapping in the course of representing a client." (*Gerbosi, supra,* 193 Cal.App.4th at p. 446.) In concluding that the wiretapping activity was unprotected, the court pointed out that "under no factual scenario : . . is such wiretapping activity protected by the constitutional guarantees of free speech and petition." (*Ibid.*) By contrast, the section 1983 claims against Christy are not based on indisputably unlawful, unprotected activities.

C. *Dwight Did Not Establish a Probability of Prevailing on the "State Actor" Component of the Section 1983 Claims*

Given that the section 1983 claims against Christy are based on protected activities (Code Civ. Proc., § 425.16, subd. (e)(2)), we turn to the second prong of the anti-SLAPP inquiry and consider whether Dwight met his burden of establishing a probability of prevailing on the claims (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 95). To establish a probability of prevailing on the section 1983 claims, Dwight was required to " 'state[] and substantiate[] a legally sufficient claim. [Citations.]' " (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1123.) More specifically, he had to adduce competent, admissible evidence that the claims were " ' " 'legally sufficient and supported by a sufficient prima facie showing of facts to

sustain a favorable judgment·. . . .' [Citation.]" ' " (*Chabak v. Monroy, supra,* 154 Cal.App.4th at pp. 1512–1513; see *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 [124 Cal.Rptr.3d 256, 250 P.3d 1115].)

" ' " " 'The burden on the plaintiff is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment.' " [Citation.]' [Citation.] Thus, 'The plaintiff need only establish that his or her claim has "minimal merit" [citation] to avoid being stricken [pursuant to Code of Civil Procedure section 425.16]. [Citation.]' " (*Chabak v. Monroy, supra,* 154 Cal.App.4th at p. 1513.) In determining whether the plaintiff has made a prima facie evidentiary showing on the second prong of the anti-SLAPP inquiry, we consider the pleadings and the evidence adduced on the motion. (Code Civ. Proc., § 425.16, subd. (b)(2).) We neither weigh the credibility nor compare the probative strength of competing evidence (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733]), and we disregard declarations lacking in foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26 [53 Cal.Rptr.3d 752]).

 Section 1983 applies to persons acting "under color of" state law,[8] and normally does not apply to private actors, such as Christy. (See *Flagg Bros., Inc. v. Brooks* (1978) 436 U.S. 149, 155–156 [56 L.Ed.2d 185, 98 S.Ct. 1729].) "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor. [Citation.]" (*Franklin v. Fox* (9th Cir. 2002) 312 F.3d 423, 441.) In support of the section 1983 claims, Dwight alleges that Christy conspired with state actors, including the social worker defendants, to fabricate evidence that he sexually abused R1 and to use the false evidence to deprive Dwight and the girls of their federal constitutional rights· against unlawful seizure and to familial association.

 To support these conspiracy allegations, Dwight was required to adduce competent, admissible evidence that there was an agreement or a meeting of the minds between Christy and at least one social worker or other state actor to deprive Dwight and the girls of their federal constitutional rights. (*Woodrum v. Woodward County* (9th Cir. 1989) 866 F.2d 1121, 1126; Code Civ. Proc., § 425.16, subd. (b)(2).) Alternatively, he was required to show that Christy participated in "joint action" with social workers or other state actors to deprive Dwight or the girls of their federal constitutional

---

[8] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

rights. (*Franklin v. Fox, supra*, 312 F.3d at p. 441.) None of the evidence adduced on the motion supports a reasonable inference that Christy engaged in such a conspiracy or joint action.

Instead, Dwight merely speculates that Christy conspired or engaged in joint action with social workers and L.S. to fabricate false allegations that Dwight was sexually abusing the girls. For example, Dwight alleges that L.S. had "preexisting personal and professional relationships" with the social worker defendants and with Christy, through her work for the Los Angeles County Office of Education. But L.S. and Christy flatly denied this allegation, and Dwight adduced no competent, admissible evidence to support it. More generally, Dwight speculates that L.S., Christy, and the social worker defendants were in cahoots because they all worked with abused children, and R1's initial therapy session with Christy took place on the day she was to have her first overnight visit with Dwight. But none of these circumstances support a reasonable inference that Christy conspired or engaged in joint action with state actors, including the social worker defendants or with L.S., to deprive Dwight or the girls of their federal constitutional rights to familial association and against unlawful seizure.

In sum, Dwight's speculation is insufficient to support his conspiracy or joint action allegations. He therefore failed to make a prima facie evidentiary showing to support the state actor component of his section 1983 claims against Christy.[9]

D. *Christy's Immunity from the Section 1983 Claims Under Penal Code Section 11172*

■ Even if a plaintiff makes a prima facie evidentiary showing in support of his or her claims based on protected activities, the claims may still be stricken if the defendant can establish a complete affirmative defense to the claims. (*Chabak v. Monroy, supra*, 154 Cal.App.4th at p. 1513.) In order

---

[9] Because Dwight did not make a prima facie evidentiary showing on the state action component of the section 1983 claims, it is unnecessary to determine whether he made a sufficient prima facie evidentiary showing on the other elements of the claims, including that either he or the girls were deprived of their constitutionally protected rights *without due process of law*—another necessary element of the claims. (See generally *Chadwick, supra*, 224 Cal.App.3d at p. 817, fn. 4.)

to demonstrate a probability of prevailing on the merits of the claims, the plaintiff must present evidence that, if credited, is sufficient to overcome the defendant's affirmative defense. (*Flatley, supra,* 39 Cal.4th at p. 323.)

In granting Christy's anti-SLAPP motion and striking the section 1983 claims against Christy, the trial court concluded that Christy established a complete affirmative defense to the section 1983 claims—her absolute immunity to the claims as a mandated reporter under Penal Code section 11172. (*Chadwick, supra,* 224 Cal.App.3d at pp. 823–826 [mandated reporters of suspected child abuse and neglect are absolutely immune from liability for § 1983 damages claims under Pen. Code, § 11172, based on Congress's intent in enacting the Child Abuse Prevention and Treatment Act (42 U.S.C. § 5101 et seq.) (CAPTA) in 1974].) Thus, the trial court in essence concluded that Dwight did not and could not present evidence sufficient to overcome Christy's affirmative defense of absolute immunity to the section 1983 claims.

Dwight maintains that *Chadwick* has effectively been abrogated by amendments Congress made to CAPTA in 1995. While this appeal was pending, Division Seven of the Second District Court of Appeal addressed this very question in *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455 and agreed that *Chadwick* has effectively been abrogated by the 1995 amendments to CAPTA. The court accordingly concluded that mandated reporter immunities under Penal Code section 11172 may not be asserted as a defense to section 1983 claims. (*Arce v. Childrens Hospital Los Angeles, supra,* at pp. 1485–1490.)

For the reasons articulated in *Arce*, we agree that *Chadwick* has effectively been abrogated by the 1995 amendments to CAPTA. The result here is that Christy's absolute immunity as a mandated reporter under Penal Code section 11172 cannot be asserted as an affirmative defense to Dwight's and the girls' section 1983 claims. The claims must still be stricken, however, because for the reasons discussed Dwight did not make a prima facie evidentiary showing that Christy conspired or engaged in joint action with state actors to deprive him or the girls of their federal constitutional rights.

## IV. DISPOSITION

The order striking the section 1983 claims against Christy, as alleged in the third cause of action of Dwight's second amended complaint, is affirmed. Christy shall recover her costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.

A petition for a rehearing was denied February 4, 2013, and appellant's petition for review by the Supreme Court was denied April 10, 2013, S208703.