Filed 7/17/23  Roller v. Brady CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ERIC ROLLER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KRISTINE L. BRADY,<br><br>    Defendant and Respondent. | D080996<br><br><br>(Super. Ct. No. 37-2021-00046948-CU-MM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Eric Roller, in pro. per., for Plaintiff and Appellant

Law Offices of James. R. Rogers and James R. Rogers for Defendant and Respondent.


Eric Roller appeals the order striking his complaint against Kristine L. Brady as a strategic lawsuit against public participation (SLAPP).  Roller sued Brady for violating the Confidentiality of Medical Information Act (CMIA or Act; Civ. Code, § 56 et seq.) by disclosing to a social worker who was investigating a report Roller had abused his daughter certain

information Brady had learned in the course of providing psychological services to the daughter. The trial court ruled Brady's disclosures were made in an official proceeding authorized by law and Roller had no probability of prevailing on the complaint because he was not a patient within the meaning of the CMIA and granted Brady's special motion to strike. We affirm.

BACKGROUND

Brady is a licensed clinical psychologist. In October 2018, she began providing professional services to Roller's daughter, "Claire,"[1] who was then three years old and was exhibiting oppositional and aggressive behaviors in preschool. Both Roller and Claire's mother sought therapy for her. Brady diagnosed Claire with oppositional defiant disorder, and provided "child therapy" to help Claire express and regulate her emotions by using "diagrams, drawing, and play therapy." Brady had "parent counseling meetings with both parents . . . to obtain and share information about Claire's home life (at each parent's home) and behavioral issues so that [she] could provide suggestions on parental interventions tailored to fit Claire's needs." Roller withdrew his consent to Brady's treatment of Claire in March 2020.

In April 2020, Child Welfare Services (CWS) received a report that Roller was physically and emotionally abusing Claire. A CWS social worker investigated the report by interviewing Claire, her parents, Brady, and two others.

Roller told the social worker " 'there is no basis to what was reported' " and "adamantly denied" the allegations of abuse. He "denied being diagnosed

---

[1] We continue the parties' use of this pseudonym to protect the child's privacy.

2

with any mental health conditions, meeting with a [t]herapist or taking any medications for a related condition."

During her interview by the social worker, Brady explained one of her goals in addressing Claire's behavioral problems was to assist the parents in better coparenting, but Roller opposed coparenting and insisted on " 'parallel parenting[,]' which means that each home parents the child their way and they do not take into consideration the best [interest] of the child."  Brady stated that aside from the report of abuse the social worker was investigating, she had never seen evidence Roller physically abused Claire, but Brady reported Claire was " 'terrified' " of Roller and would not tell Brady what happened in his home because Claire feared he would be upset if she did.  Brady told the social worker she could not diagnose Roller " 'officially,' " but based on conversations and interactions with him, she believed he has a personality disorder that negatively affects Claire.  Brady said she wanted to continue to work with Claire, but could not risk losing her license by doing so without Roller's consent.

Based on the interviews, the CWS social worker found the allegation of physical abuse was "**INCONCLUSIVE**" and that of emotional abuse was "**SUBSTANTIATED**."  After a grievance hearing initiated by Roller, CWS changed the finding on the emotional abuse allegation to "unfounded."

Roller sued Brady under the CMIA.  He alleged Brady violated the Act by disclosing private patient information without his consent when she spoke to the CWS social worker who was investigating the report he had abused Claire.  (See Civ. Code, § 56.10, subd. (a).)  Roller alleged as a result of the unlawful disclosures he incurred attorney fees in the grievance hearing and in a custody proceeding filed by Claire's mother and suffered mental anguish.

3

He prayed for compensatory and punitive damages, interest, and costs. (See *id.*, § 56.35.)

Brady responded with a special motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16). She argued the complaint arose from an act in furtherance of her right of petition or free speech in connection with a public issue, because her interview by the CWS social worker occurred in an official proceeding authorized by law, namely, a governmental investigation of a report of child abuse. (See *id.*, § 425.16, subds. (b)(1), (e)(2).) Brady further argued Roller had no probability of prevailing on the CMIA claim, because he was not her patient, she did not disclose any privileged information (Evid. Code, § 1027), she did not cause the damages he sought, and the claim was barred by an absolute privilege (Civ. Code, § 47, subd. (b)), an absolute immunity (Pen. Code, § 11172, subd. (a)), and the statute of limitations (Code Civ. Proc., § 340.5). (*Id.*, § 425.16, subd. (b)(1).) In support of the motion, Brady submitted a declaration describing her treatment of Claire, interactions with Claire's parents, and interview with the CWS social worker. She asked the trial court to take judicial notice of, among other things, the portion of the social worker's written report in which Roller "denied being diagnosed with any mental health conditions, meeting with a [t]herapist or taking any medications for a related condition."

Roller opposed the motion. He conceded the CMIA claim arose from protected activity within the scope of the anti-SLAPP statute, but argued he was likely to prevail on the claim because Brady's assistance in better coparenting made him her patient, Brady disclosed confidential information about Claire's therapy to the social worker without his permission, and none of the statutes on which Brady relied barred the claim. With the opposition, Roller submitted a declaration stating he "was [Brady's] patient"; she

4

"provided therapeutic treatment to [him]"; Claire "was treated by [Brady]"; he "never authorized [Brady] to disclose [Claire's] medical treatment records to CWS"; and he "suffered mental anguish and emotional distress as a result of [Brady's] actions" that "has had an adverse impact on [his] income." Roller attached to his declaration a letter from Brady in response to his questions and comments about Claire's diagnosis and treatment, which he said "provid[ed] treatment advice as to [his] own behavior and parenting."

The trial court held a hearing on the motion. It granted the request to take judicial notice of the portion of the CWS social worker's report. The court ruled the complaint arose from activity protected by the anti-SLAPP statute, and Roller had not established a prima facie violation of the CMIA because he was not Brady's patient. It therefore granted the motion and struck the complaint.

Roller appealed. (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

### DISCUSSION

Roller asks us to reverse the trial court's order granting Brady's special motion to strike. He concedes, as he did in the trial court, that his complaint arises from statements Brady made in CWS's investigation of the report of child abuse against him and so falls within the scope of the anti-SLAPP statute. (See Code Civ. Proc., § 425.16, subd. (e)(2) [protected activity includes oral statement made in connection with official proceeding]; Welf. & Inst. Code, §§ 328, subd. (a), 300, subds. (a), (c) [requiring social worker to investigate if there is cause to believe minor has suffered serious physical or emotional harm by parent]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711 (*Dwight R.*) [statements made in investigation by child protective services into suspected child abuse were made in anticipation of possible

5

juvenile dependency proceeding and fell within scope of anti-SLAPP statute].) Roller contends, however, that he met his burden to show his CMIA claim has minimal merit, because his declaration and Brady's own statements show he was her patient and none of the provisions of the Act allowing disclosure of a patient's private medical information without the patient's consent authorized the disclosures Brady made to the CWS social worker. Roller further contends the immunity, privilege, and limitations statutes on which Brady relied do not bar his claim. As we shall explain, the trial court correctly determined that because Roller was not Brady's patient, he had no claim under the CMIA. We therefore need not, and do not, address his contentions regarding the defenses Brady asserted to the claim.

We review de novo an order on an anti-SLAPP motion. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Dwight R.*, *supra*, 212 Cal.App.4th at p. 710.) Where, as here, the complaint arises from activity protected by the anti-SLAPP statute, to defeat the motion the plaintiff must show the complaint is legally sufficient and there is sufficient evidence to support a prima facie case that would entitle the plaintiff to relief. (*Olson v. Doe* (2022) 12 Cal.5th 669, 678-679; *Dwight R.*, at pp. 713-714.) In deciding whether the plaintiff has met that burden, we employ a summary-judgment-like procedure in which we do not weigh the evidence or resolve conflicts in the evidence, but instead consider the pleadings and decide whether the plaintiff's evidence, accepted as true, and the inferences reasonably drawn therefrom suffice to sustain a judgment for the plaintiff. (*Olson*, at p. 679; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385; *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.)

Roller's complaint contains a single count alleging Brady violated the CMIA by "disclosing the private patient information of [himself] and Claire

6

without legal consent" and thereby caused him damages.[2] The Act provides, with specified exceptions, that a health care provider "shall not disclose medical information regarding a patient . . . without first obtaining an authorization." (Civ. Code, § 56.10, subd. (a); see *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 38 [CMIA "require[s] a health care provider to hold confidential a patient's medical information unless the information falls under one of several exceptions"].) The Act authorizes "a patient whose medical information has been used or disclosed in violation of Section 56.10 . . . and who has sustained economic loss or personal injury therefrom" to recover specified monetary relief. (Civ. Code, § 56.35.) The CMIA defines "patient" as "a natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains." (*Id.*, § 56.05, subd. (*l*).)[3] A "provider of health care" includes a clinical psychologist, such as Brady (Civ. Code, § 56.05, subd. (*o*); Bus. & Prof. Code, § 2904.5). "Medical information" includes "any individually identifiable information . . . in possession of or derived from a provider of health care . . . regarding a patient's medical history, . . . mental or physical

---

[2] In the trial court, Roller argued he was a patient of Brady and also could rely on Claire's status as a patient because he was a custodian of Claire with authority over disclosure of her medical information. On appeal, he argues only that he was a patient of Brady and she disclosed his medical information. Roller has thus abandoned any claim based on Claire's status as a patient of Brady. (*Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 826.)

[3] Roller in his opening brief and Brady in her brief relied on the definition of "patient" for purposes of the psychotherapist-patient privilege (Evid. Code, § 1011). In his reply brief, Roller says such reliance was incorrect and turns to the definition in the CMIA. Because we must determine whether Roller was a "patient" under the Act, its definition controls. (*Estate of Thomas* (2004) 124 Cal.App.4th 711, 722.)

7

condition, or treatment." (Civ. Code, § 56.05, subd. (i).) Although the CMIA does not define "health care services," one court has held the phrase requires performance of professional services[4] and included an examination by a physician that "generated highly sensitive medical information." (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 429-430 (*Pettus*).) Thus, to prevail under the Act, Roller must show he was a "patient" of Brady, i.e., that he received an examination or other professional services from her through which she acquired sensitive information about his health.

On the record presented on the anti-SLAPP motion, Roller did not make that showing. Brady stated in her declaration that she is a licensed clinical psychologist and "began providing professional services in the form of *child therapy to* [*Claire*]" after her parents presented her for therapy. (Italics added.) Brady explained her "clinical *treatment of Claire* was multi-faceted and included individual work with Claire alone and interventions with her support system," which included "parent counseling meetings with both parents" to obtain information so that Brady "could provide suggestions on parental interventions tailored *to fit Claire's needs*." (Italics added.) Brady stated Roller "never asked for or received any form of assessment or treatment for his mental or other health-related needs from [her]. The parent counseling meetings and discussions with him did not involve

---

[4] The professional services of a clinical psychologist "involv[e] the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior." (Bus. & Prof. Code, § 2903, subd. (a).) Such services include "assessment, diagnosis, prevention, treatment, and intervention to increase effective functioning of individuals, groups, and organizations" (*id.*, § 2903, subd. (b)), as well as "the use of psychological methods in a professional relationship to assist a person or persons to acquire greater human effectiveness or to modify feelings, conditions, attitudes, and behaviors that are emotionally, intellectually, or socially ineffectual or maladaptive" (*id.*, § 2903, subd. (c)).

diagnosing or otherwise treating his mental or emotional issues or conditions. They were solely focused on providing him with parenting tools *as part of Claire's support system.*" (Italics added.) Brady attached to her declaration an e-mail from Roller in which he wrote, "Thank you for all your effort *in treating* [*Claire*] over the past 1.5 years[;] however, going forward I do not consent to *your treating* [*Claire*]"; and a later e-mail in which he requested a copy of "[*Claire's*] *records.*" (Italics added.) This evidence shows that although as Claire's father Roller communicated with Brady about Claire's condition and treatment, Brady performed professional services on Claire, not Roller (see fn. 4, *ante*); and in doing so, Brady gathered sensitive information about Claire's mental health, not Roller's. Based on this evidence, the "patient" for purposes of the CMIA was Claire, not Roller. (Civ. Code, § 56.05, subd. (*l*); *Pettus*, *supra*, 49 Cal.App.4th at pp. 429-430.)

Nothing Roller submitted in opposition to the anti-SLAPP motion showed he was Brady's patient for purposes of the CMIA. The assertions in his declaration that she "provided therapeutic treatment to [him]" and he "was her patient" are bare conclusions. We disregard such conclusory and argumentative statements because declarations must state evidentiary facts, not legal conclusions or ultimate facts. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1240; accord, *Dwight R.*, *supra*, 212 Cal.App.4th at p. 714.)

The letter from Brady that Roller attached to his declaration, which he asserted "provid[ed] treatment advice as to [his] own behavior and parenting," did not constitute the rendition of health care services to him. The letter was a response from Brady to Roller's questions and comments about Claire's diagnosis and treatment. Although in the letter Brady stated one of her treatment goals was "decreasing the negative and hostile

9

interactions between [Roller] and [Claire's mother]" that were causing "stress" and "anxiety" in the family, and suggested joint meetings with them to help avoid "situation[s] causing intense emotions and disagreement," Brady explained the purpose of the suggested meetings was to help her achieve the ultimate goal of solving Claire's behavioral problems. Brady made no assessment or diagnosis of, and provided no treatment or intervention for, Roller in the letter.

Roller also attached to his declaration a portion of the report of the CWS social worker in which she wrote that during her interview Brady expressed a belief, based on " 'the extensive conversations and interactions' " she had with Roller and not on an " 'official[ ]' " diagnosis, that " 'he has a personality disorder.' " Brady had those contacts with Roller in his capacity as a parent of a minor child to whom she was providing health care services, however, not in his capacity as a recipient of such services himself. Where, as here, parents with joint custody present their child to a psychologist for treatment of behavioral problems caused in part by parental conflict, the psychologist will necessarily form impressions about the parents and how their conduct contributes to the child's behavioral problems, and the parents necessarily will be involved in the psychologist's diagnosis and treatment of the child. Such concomitant impressions and involvement, however, do not make the parents recipients of the professional services the psychologist provides the child. Moreover, in another portion of the social worker's report that Roller attached to his complaint but does not address, he acknowledged he had not received health care services from Brady. The social worker wrote that when she interviewed Roller, he "denied being diagnosed with any mental health conditions, meeting with a [t]herapist or taking any medications for a related condition." That denial undermines Roller's

10

conclusory assertion in opposing the anti-SLAPP motion that he was a patient of Brady.

In sum, we conclude Roller did not meet his burden on the anti-SLAPP motion to make a prima facie showing he was a "patient" of Brady within the meaning of the CMIA. The trial court therefore correctly determined he was not entitled to relief under the Act and struck the complaint.

## DISPOSITION

The order granting the special motion to strike the complaint is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

11