Filed 7/26/23  Rueda v. ViacomCBS CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| GABRIEL RUEDA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> VIACOMCBS INC., f/k/a CBS CORPORATION, et al., <br><br> Defendants and Respondents. | B310123 <br><br> (Los Angeles County Super. Ct. No. BC611486) |


APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed in part, reversed in part, and remanded.

Withers Bergman and Amman A. Khan for Plaintiff and Appellant.

Venable, Lee S. Brenner, Joshua M. Rosenberg, and Michael C. Godino for Defendants and Respondents.

This is an appeal from an order granting a Code of Civil Procedure section 425.16[1] special motion to strike two causes of action—for extortion and intentional infliction of emotional distress—as alleged against defendants and respondents CBS Corporation (CBS) and Showtime Network (Showtime) (collectively, the CBS Defendants). The operative complaint alleges the acts that form the bases for these causes of action were committed by co-defendant Keith Davidson (Davidson), an attorney, and other third parties, and assigns culpability to the CBS Defendants under theories of vicarious liability. Plaintiff and appellant Gabriel Rueda (Rueda) believes the trial court wrongly concluded his extortion and emotional distress claims arise from litigation-related activity protected by section 425.16, the anti-SLAPP statute.[2] In deciding whether Rueda is correct, we consider whether Davidson's alleged actions are illegal as a matter of law and whether the challenged causes of action arise from protected activity only by Davidson (or also from unprotected activity allegedly undertaken by others).

---

[1] Undesignated statutory references that follow are to the Code of Civil Procedure.

[2] We will elaborate, but the statute permits a defendant to bring a special motion to strike claims that "aris[e] from" the defendant's protected activity, as defined in the statute. (§ 425.16, subd. (b).) If the defendant shows the challenged claim arises from protected activity, the court must grant the motion to strike unless the plaintiff establishes "a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b).)

## I. BACKGROUND

### A. *The Facts as Pled in the Operative Complaint*

Rueda was an actor, a waiter, and a boxing fan. In 2014, Rueda arranged for Leslie Moonves (Moonves), then President and CEO of CBS and Showtime to meet with Freddie Roach (Roach), then the trainer of boxer Emmanuel "Manny" Pacquiao (Pacquiao), in hopes that the two would be able to negotiate a boxing match between Pacquiao and Floyd Mayweather (Mayweather).

According to Rueda, Moonves told Rueda he would be "taken care of financially" as a result of the introduction and paid a finder's fee of 2% on behalf of the CBS Defendants—if the fight took place. Roach similarly told Rueda he was going to "make a lot of money" and agreed Rueda would be paid a 2% finder's fee if the fight occurred.

Rueda, Moonves, and Roach met in May 2014. Roach and Moonves stated Rueda would be paid a finder's fee if the fight went forward.[3] Based on Moonves and Roach's representations, Rueda told the media he was being paid a finder's fee. Moonves then told Rueda not to discuss any financial aspects of the fight with the media, representing the negotiations were difficult and financial disclosures could jeopardize them. Moonves again told Rueda he would be paid a finder's fee if the fight went forward.

The Pacquiao-Mayweather fight took place in May 2015 and was jointly broadcast by Showtime and HBO. Gross proceeds from the broadcast were reportedly in the hundreds of millions of dollars, and Pacquiao is said to have earned more

---

[3] Roach also told Rueda that Pacquaio had specifically authorized the finder's fee.

than $160 million.  The CBS Defendants gave Rueda a plane ticket to the fight in Las Vegas, one night's free lodging, and $10,000 to cover other expenses.

A month after the fight, Rueda met with Moonves to ascertain the amount due from the CBS Defendants, and the two discussed the CBS Defendants' earnings.  Moonves told Rueda to approach Roach and Pacquiao directly about their portion of the finder's fee and offered to facilitate those discussions.

Approximately a week later, Rueda received a voicemail from Keith Davidson (Davidson).  When the two connected, Davidson said he was a close friend of Roach and Pacquiao, as well as Pacquiao's former business manager.  Davidson and Rueda met in person at a coffee shop in the morning on June 25, 2015.  Davidson asked Rueda what he wanted.  Rueda explained the agreement for the finder's fee, and said he expected to see Roach and Pacquiao's financials from the fight.  Davidson disclaimed knowledge of the finder's fee deal and indicated he did not have information on earnings.  Rueda said he could not give Davidson a dollar figure without the financials.  Davidson became angry and aggressive, and revealed he was an attorney for "Roach, Pacquiao and a few other powerful people."  Davidson told Rueda he would call him in a few days.

Several days later, Davidson and Rueda met again. Davidson told Rueda he was going to accept a $50,000 cash payment and was going to sign a general release for Moonves, the CBS Defendants, Roach, and Pacquiao.  Davidson told Rueda it was not a negotiation, he had 48 hours to accept the offer, and if he did not, he would lose his job as a waiter and "never work as an actor in this town again."  He also said Rueda was dealing with powerful people who did not care if he got hurt.  Davidson

4

was "very aggressive" during the meeting, and three people who overheard the conversation told Rueda they "wanted to call the police."

Rueda telephoned the restaurant where he worked later that day and learned Davidson had already contacted his employer and accused him of blackmailing Moonves. Rueda's employer informed him he would be fired if the matter was not resolved because Moonves was a very valuable client. Rueda called Davidson and said he was going to tell Moonves about Davidson's conversations with Rueda and his employer. Davidson told Rueda not to talk to anyone, and said there would be "serious consequences" if Rueda did not take the money and sign the release.

Rueda did not accept Davidson's offer. Over the following weeks, Rueda was threatened and intimidated by members of Roach's gym. He was taunted at his workplace, followed at the end of shifts, had his tires slashed, and was filmed without his consent. One of Roach's affiliates communicated to Rueda that he had connections to Rueda's other employers and would use those to destroy Rueda's career. Days later, Rueda was informed he would no longer be working on a Marvel television show. Rueda filed a police report regarding Davidson's threats and intimidation. When police officers contacted Davidson about the investigation, Davidson admitted he contacted Rueda's employer.

B.    *The First Round of Anti-SLAPP Motions*

Approximately eight months after Rueda met with Davidson, he sued Pacquiao, Roach, Davidson, CBS, and Showtime. Rueda alleged causes of action based on theories of contract, unjust enrichment, fraud, extortion, and intentional

5

infliction of emotional distress (IIED). The original complaint did not allege the extortion or IIED causes of action as against the CBS Defendants. Pacquiao and Davidson, against whom those two causes of action *were* alleged, filed anti-SLAPP motions to strike them. They contended Rueda's extortion and IIED claims arose from Davidson's protected activity, namely, making a settlement offer in anticipation of litigation.

Rueda opposed the anti-SLAPP motions and submitted a declaration in support of his opposition. In his declaration, he asserted, among other things, that he was not aware Davidson was an attorney until the end of their first in-person meeting.

The trial court denied Pacquiao and Davidson's anti-SLAPP motions. This court affirmed, holding Pacquiao and Davidson did not establish the extortion and IIED claims arose from protected prelitigation activity. (*Rueda v. Pacquiao* (Oct. 11, 2018, B277840) [nonpub. opn.] (*Rueda I*).)

C. *The Operative Complaint and Substitution of the CBS Defendants for Does Named in the Causes of Action at Issue*

Rueda filed his first amended complaint (the operative complaint) in August 2016. In addition to alleging causes of action against the named defendants, the operative complaint included a handful of allegations related to "Doe" defendants. It alleged the Doe defendants participated in the breaches and misconduct alleged in the complaint, and that "each Doe defendant was acting as an agent, joint venturer, an integrated enterprise and/or alter ego for each of the other Defendants and each w[as a] co-conspirator[ ] with respect to the acts and the wrongful conduct alleged [in the complaint] so that each is

6

responsible for the acts of the other in connection with the conspiracy and in proximate connection with the other Defendants."  The operative complaint amended the causes of action for extortion and IIED to allege them against Doe defendants as well.

The cause of action for extortion alleged that Does 1-6 "and goons from the Wildcard Gym . . . harassed, stalked, beset and terrorized Rueda on behalf of Roach and Pacquiao," and Rueda and Pacquiao knew these individuals, i.e., their agents, would meet with Rueda to make the above-described threats or take the above-described actions.  The substance of the IIED cause of action alleged Roach, Pacquiao, Davidson, and the Doe defendants' outrageous conduct caused Rueda's emotional distress.

In September 2019, Rueda amended the operative complaint to substitute Showtime and CBS for Doe defendants named in the extortion and IIED causes of action.

### D.     The CBS Defendants' Anti-SLAPP Motion

Like Pacquiao and Davidson before them, the CBS Defendants filed an anti-SLAPP motion contending the extortion and IIED claims arose from Davidson's protected activity in trying to settle Rueda's claim.  The CBS Defendants also argued Rueda could not establish a probability of prevailing on the merits of his claims.  Among the evidence the CBS Defendants submitted in connection with the anti-SLAPP motion was a declaration from Davidson.

7

### 1. *Davidson's declaration*

Davidson declared that Nick Khan (Khan), Roach's agent, asked Davidson to meet with Rueda and see if he could settle Rueda's claims. Though Davidson only represented Roach, his goal was to secure a global settlement for all parties.

Davidson and Rueda met at a busy coffee shop on June 24, 2015. Unbeknownst to Rueda, Davidson had hired a private investigator to make an audio recording of the meeting.[4] At the beginning of the meeting, Davidson informed Rueda he was Roach's attorney. Rueda then said he had a team "backing him," but he denied being represented by a lawyer. At the conclusion of the conversation, Davidson told Rueda he would get back to him in a day or two. After meeting with Rueda, Davidson called Khan and told him, among other things, that litigation was likely.

Davidson met Rueda again on June 29, 2015. Davidson offered Rueda $50,000 to settle his claims. Rueda rejected that offer and stated he would settle for 1% of $600 million. After the meeting, Davidson called Khan and said he had been unable to settle the case.

Davidson called Craig Susser (Susser), the owner of the restaurant where Rueda worked and someone Davidson had been acquainted with for years. Davidson asked Susser if he had information about Rueda's demand for money for his role in orchestrating the fight. Davidson denied telling Susser to fire Rueda or implying that Rueda should be fired. He denied telling Susser that Rueda blackmailed anyone.

---

[4]     The audio recording was submitted in connection with the anti-SLAPP motion.

Davidson also denied making statements attributed to him in Rueda's declaration opposing Pacquiao's anti-SLAPP motion in 2016 (many of which were reflected in allegations in the operative complaint). According to Davidson, he did not threaten Rueda and use a "stern voice," he did not say Rueda would lose his job as a waiter or never work as an actor in this town again, he did not say he would use his connections to ensure Rueda never acted again, he did not say Rueda was dealing with powerful people who did not care if he were hurt, and there was no discussion of physical harm of any kind. Davidson asserted he knew nothing about anyone threatening Rueda, following or mocking him, vandalizing his tires, or otherwise intimidating him. He denied extorting or trying to extort Rueda.

### 2. Susser's Declaration

The CBS Defendants also submitted a declaration by Susser. Susser asserted in pertinent part that he had been an acquaintance of Davidson for years and knew he was a lawyer. Davidson asked Susser what he knew about Rueda's claim and threat to sue people involved in the fight, including Moonves. Davidson did not state or imply that Rueda was blackmailing anyone or should be fired from his job. Davidson was professional and did not make any threats.

### E. Rueda's Opposition

Rueda opposed the CBS Defendants' special motion to strike. Rueda argued Davidson's conduct at his first meeting with Rueda was not the only conduct giving rise to the extortion and IIED claims. He pointed to Davidson's conduct at the second meeting, plus the alleged stalking, harassment, and assault by

9

other co-conspirators and agents that came later, as bases for his claim. Rueda asserted the activity could not be protected because it was criminal in nature.

Rueda submitted a declaration in which he asserted facts regarding his meetings with Davidson and the subsequent acts by third parties that largely mirrored the allegations in the operative complaint but, in some respects, provided additional details. For example, Rueda's declaration identified Richie Palmer (Palmer), a friend of Roach and Moonves, as one of the individuals who threatened and harassed Rueda. It also identified Palmer as the individual who also took steps to have Rueda fired from his recurring acting role on the Marvel television show. Rueda additionally asserted he had been watched and stalked by a new neighbor after he relocated to Colorado.

*F. The CBS Defendants' Evidentiary Objections*

The CBS Defendants objected to some of the evidence submitted by Rueda. Objection numbers 25 and 26 challenged different portions of Rueda's declaration.

Specifically, objection number 25 challenged a paragraph from Rueda's declaration in which he asserted Davidson told Rueda he was connected and would use those connections to ruin Rueda's acting career. The paragraph also stated Davidson told Rueda he was dealing with powerful people who did not care if he was hurt and Davidson was so aggressive and threatening during the second meeting that three bystanders said they wanted to call the police. The CBS Defendants objected on the ground that the statement that Davidson threatened to use his contacts to ruin Rueda's acting career contradicted Rueda's prior allegation

10

that Davidson would arrange for his contacts to get more acting roles for Rueda. The objection did not address the substance of anything other than the first sentence of the paragraph.

Objection number 26 addressed a paragraph in Rueda's declaration regarding Davidson's call to Susser and Susser's subsequent conversation with Rueda. The CBS Defendants objected that Rueda had no foundation or personal knowledge of a conversation between Davidson and Susser. The objections did not address Rueda's subsequent conversation with Susser.

### G.    *The Trial Court's Ruling*

The trial court held a hearing, took the matter under submission, and ultimately granted the anti-SLAPP motion.[5] The court sustained a number of evidentiary objections, including the CBS Defendants' objections 25 and 26. The court did not explain the reason for its rulings on those objections.

In denying the motion, the court found Davidson's June 29 statements were made in anticipation of litigation. It concluded Davidson had more than a reasonable basis to believe Rueda was contemplating litigation when he made the statements. The

---

[5]    During oral argument, when Rueda began to address actionable conduct other than Davidson's threats, counsel for the other parties objected. Specifically, they objected to his reference to being intimidated by members of the Wildcard Gym, to being followed and physically intimidated, and to men coming into the restaurant, arguing there was no evidence other than Rueda's speculation. The trial court reiterated its ruling on the evidentiary objections.

Rueda challenges certain of the evidentiary rulings on appeal, but even if he is correct, none of the challenged rulings affect our analysis.

court further found Rueda had made several implied threats of litigation at the June 24 meeting, at which Davidson revealed he was an attorney representing Roach. By the second meeting, the parties' positions remained far apart and there was a threat of litigation.

The trial court also found Rueda had not demonstrated a probability of success on the merits for the claims arising from protected activity. The court concluded Davidsons's statements were protected by the litigation privilege, Rueda had not demonstrated the CBS Defendants ratified or approved Davidson's conduct, the claims were barred by the statute of limitations, and amendments substituting the CBS defendants for Doe defendants were time barred.

## II. DISCUSSION

Rueda's principal contention—that the conduct addressed in the CBS Defendants' motion cannot constitute protected activity because it was illegal as a matter of law—is unavailing. In order for conduct to be illegal as a matter of law and thus unprotected, the defendant must either concede the illegality or the illegality must be established by uncontroverted evidence. Neither is true here. The trial court accordingly did not err in determining *some* allegations in the extortion and intentional infliction of emotional distress causes of action should be stricken under the anti-SLAPP statute. But the court's ruling striking those causes of action in their entirety was too broad. The CBS Defendants' anti-SLAPP motion contended only that Davidson's conversations with Rueda and Susser constituted protected activity; they did not argue the other conduct upon which those causes of action are predicated was protected activity too.

12

Instead, the CBS Defendants argued only that there is no sufficient allegation they could be vicariously liable for this other conduct allegedly engaged in by unnamed third parties. That, however, is an argument concerning the merits of the claims that must be resolved by some other procedural means.

### A. The Anti-SLAPP Statute and the Standard of Review

"[A] special motion to strike under section 425.16 involves a two-step process. First, the moving defendant must make a prima facie showing 'that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech . . . ."' [Citation.]" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420 (*Montebello*).) If the defendant carries this burden, the plaintiff must then demonstrate its claims have at least "'minimal merit.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 (*Baral*).)

We review an order granting or denying an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) We consider the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated. (§ 425.16, subd. (b)(2); see also *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 94.)

### B. Davidson's Alleged Conduct Is Not Illegal as a Matter of Law

In this appeal, Rueda does not challenge the trial court's conclusion that Davidson's actions—including his statements during their coffee shop meetings—were undertaken in anticipation of litigation contemplated in good faith and under

13

serious consideration. That point is accordingly waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).) We therefore address the only argument that Rueda *does* make in this appeal: that Davidson's statements to Rueda and the subsequent conduct allegedly executing on Davidson's threats cannot be stricken under the anti-SLAPP statute because they are criminally extortionate and illegal as a matter of law.[6]

A party filing an anti-SLAPP motion satisfies the first prong of the statute by making a prima facie showing the plaintiff's cause of action "aris[es] from" an act the defendant performed in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; accord, *Park, supra*, 2 Cal.5th at 1062 ["A claim arises from protected activity when that activity underlies or forms the basis for the claim"].) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, at 1063; accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1015 [anti-SLAPP analysis begins with a consideration of the elements of each claim, "the actions alleged to establish those elements, and whether those actions are protected"] (*Bonni*).)

---

[6] The CBS Defendants contend Rueda also forfeited this argument by failing to raise it below. It is true that in the trial court Rueda argued only sparingly that some or all of the alleged conduct was illegal as a matter of law and therefore unprotected, but we believe the point was adequately raised. We therefore resolve the argument on the merits.

14

"[W]here a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity . . . in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*); accord, *Montebello, supra,* 1 Cal.5th at 423-424.)  In *Flatley,* our Supreme Court held that an attorney defendant could not invoke the anti-SLAPP statute in an action concerning a purported pre-litigation settlement demand that amounted to criminal extortion as a matter of law. (*Flatley, supra,* at 332.)

A showing that conduct was illegal as a matter of law may be made "either through defendant's concession or by uncontroverted and conclusive evidence." (*Flatley, supra,* 39 Cal.4th at 320; see also *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.)  Thus, if "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley, supra,* at 316.)

Here, the CBS Defendants do not concede the illegality of Davidson's conduct.  The applicability of the *Flatley* exception thus hinges on whether the uncontroverted evidence conclusively shows Davidson's conduct constituted criminal extortion as a matter of law.  We conclude it does not.

The Penal Code defines extortion to include "the obtaining of property or other consideration from another, with his or her

15

consent, . . . induced by a wrongful use of force or fear." (Pen. Code, § 518, subd. (a).) Fear, for purposes of extortion, "may be induced" by five specified threats, including "a threat . . . [¶] . . . To do an unlawful injury to the person or property of the individual threatened or of a third person." (Pen. Code, § 519.) Here, the evidence does not conclusively establish Davidson made such a threat: Rueda's declaration asserts Davidson did, but Davidson's declaration denies the allegations and asserts Davidson did not threaten Rueda at all. Because there is no uncontroverted evidence establishing Davidson's conduct was illegal as a matter of law, the *Flatley* exception does not apply.[7] (E.g., *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 [no uncontroverted evidence of illegality where the defendant denied the allegation of engaging in allegedly unlawful activities].)

Rueda has not challenged the trial court's determination that he has no reasonable probability of prevailing on the claims that arise from Davidson's conduct that we have concluded, for purposes of this appeal, is protected by the anti-SLAPP statute (in that it is not illegal as a matter of law). We accordingly need not analyze the issue; we can and do hold there was no error in granting the anti-SLAPP motion as to those claims.

---

[7]    Because *Flatley* does not apply based on the conflicting state of the evidence in the record, none of the sustained evidentiary objections Rueda challenges on appeal would alter our analysis. Accordingly, we need not address Rueda's contention that the trial court erred by sustaining the CBS Defendants' evidentiary objections numbers 25 and 26.

16

C.	*Striking the Extortion and Intentional Infliction of Emotional Distress Claims in Their Entirety Was Error*

When an anti-SLAPP movant seeks to strike a cause of action in its entirety, our Supreme Court has held a court should analyze each separate claim for relief within the cause of action to determine whether the acts are protected. (*Bonni, supra*, 11 Cal.5th at 1010-1011.) However, "[i]f a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Id.* at 1011; *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 459.) Only allegations of protected activity may be stricken under section 425.16. (*Baral, supra*, 1 Cal.5th at 396.)

The CBS Defendants' anti-SLAPP motion argued Rueda's extortion and IIED causes of action arose from statements by Davidson that constituted protected activity.[8] The motion did not argue the conduct allegedly undertaken by non-defendant third parties was protected. On appeal, Rueda asserts the challenged causes of action include claims for relief that are predicated only on unprotected activity, namely, Davidson's call to Susser and

---

[8]	While the body of the statement of facts and the discussion portion of the motion primarily addressed Davidson's statements to Rueda, the motion included footnotes that addressed the pertinent facts and analysis as applied to Davidson's statements to Susser. It also asserted Rueda alleged the CBS Defendants were liable for Davidson's conduct, namely his statements to Rueda during their second meeting and his statements to Susser. The notice of motion also expressly referred to Davidson's statements to Susser as protected activity.

17

the alleged harassment and intimidation by third parties.  That is half right, at least as the issue has been briefed.

### 1. *The harassment and related conduct by third parties*

The CBS Defendants did not contend in their motion below, nor do they contend on appeal, that the third party conduct alleged in the complaint (i.e., conduct of others besides the named defendants)—specifically, the "pattern of harassment, assault, stalking, mocking, tire slashing, career and job destruction"—constitutes protected activity.  Rueda contends this third party conduct is unprotected by the anti-SLAPP statute and the CBS Defendants have not demonstrated otherwise.  We agree that this alleged third party conduct is unprotected.

Instead of arguing that the third party conduct is somehow protected, the CBS Defendants' argue these allegations were properly stricken along with everything else in the challenged causes of action because Rueda has not alleged the CBS Defendants themselves participated in any assault, harassment, or other bad act.[9]  They acknowledge Rueda's vicarious liability

---

[9]     The CBS Defendants also contend Rueda waived any argument on this issue because Rueda's opposition to the anti-SLAPP motion did not ask the trial court to parse out what was protected and unprotected activity nor present pertinent authority or substantive argument.  This is not entirely accurate.  While Rueda did not include a separate section in his briefing addressing this topic, the argument was made in the introduction to his opposition.  That is not how it should be done, but we conclude it was sufficient to preserve the issue for appeal.  (E.g., *Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1097,

allegations against them, but they contend the allegations should be disregarded because they are conclusory.[10]  As a result, they contend the claims were properly stricken in their entirety against the CBS Defendants.  In so arguing, the CBS Defendants effectively contend the anti-SLAPP motion was properly granted because the extortion and IIED causes of action fail to state claims against them.  This argument, which goes to the merits of Rueda's claims, is not an appropriate inquiry for the first step of an anti-SLAPP analysis.

"Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis."  (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 (*Coretronic*); see *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217 ["'[t]he question is what is pled—not what is proven'"].)  Reviewing the pleadings and declarations, our task on a prong one analysis is to "determine what conduct is actually being challenged, not . . . whether the conduct is actionable."

_____

fn. 17; *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 143.)

[10]     The CBS Defendants also contend Rueda forfeited the argument that the operative complaint alleges they can be vicariously liable for the alleged third party conduct.  There was no reason for Rueda to argue the point, however, because the CBS Defendants did not substantively argue the insufficiency of those allegations in their anti-SLAPP motion.  Specifically, we are not convinced a footnote in the motion asserting it was unlikely Rueda contended the CBS Defendants were "goons from the Wildcard gym" was sufficient to place the issue in dispute (nor was a similar reference in the CBS Defendants' trial court reply).

19

(*Coretronic, supra,* at 1389.)  Our sole inquiry is whether "the defendant's activity that gives rise to his or her asserted liability . . . constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; see *Park, supra,* 2 Cal.5th at 1063 [liability-forming act must *itself* constitute protected speech or petitioning].)

If the CBS Defendants believed Rueda's claims that they were liable based on the acts of third parties were insufficiently stated and wished to have them dismissed, they could have filed a demurrer or other motion so arguing.  They cannot circumvent procedure by asking a court to excise portions of the complaint they believe are insufficient via an anti-SLAPP motion.  (*Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 92 [defendant's contention that allegations of organization's liability under relationship theories were conclusory might demonstrate complaint was vulnerable to demurrer but did not bear on analysis under first step of anti-SLAPP analysis].)

The CBS Defendants' reliance on *Contreras v. Dowling* (2016) 5 Cal.App.5th 394 (*Contreras*) does not compel a different result.  In *Contreras*, a tenant sued a landlord's attorney, alleging the attorney conspired with the landlord to enter the rented premises illegally.  The attorney filed an anti-SLAPP motion, arguing his conduct was protected because it involved representing his clients.  The court of appeal agreed, finding the attorney's actions constituted "communicative acts by an attorney representing clients in pending or threatened litigation."  (*Id.* at 399.)  In so holding, the *Contreras* court disregarded the complaint's aiding and abetting and conspiracy allegations because they "d[id] not suffice to remove these acts from the

20

protection of the statute." (*Ibid*.) *Contreras* is inapposite because the allegations in the complaint there made it clear the attorney had been sued for actions taken while representing a client, and those actions were per se protected activity. Here, in contrast, the only acts alleged against the CBS Defendants are that they acted as agents, joint venturers, alter egos, and/or co-conspirators. This is not protected activity, nor do the CBS Defendants contend it is. The trial court therefore erred by granting the anti-SLAPP motion in its entirety.

### 2. *Davidson's call to Susser*

Rueda additionally contends Davidson's call to Susser did not constitute protected activity. He provides no legal analysis to support the assertion, however. He cites only a footnote in *Rueda I* that states Roach and Pacquiao (their anti-SLAPP motion was involved in that appeal) did not contend the conduct was protected activity. The CBS Defendants who brought the motion currently before us, however, do argue the call constitutes anti-SLAPP protected activity.

Because the CBS Defendants argued Davidson's call to Susser was protected activity below and Rueda provides no reasoned analysis in support of his contention that the call is in fact unprotected, the argument is waived. (*Badie*, *supra*, 67 Cal.App.4th at 784-785; see also *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"].)

21

## DISPOSITION

The trial court's order is reversed, and the cause is remanded with directions to enter a new and different order granting the CBS Defendants' special motion to strike the eighth and ninth causes of action (including the general allegations incorporated therein) except insofar as those causes of action include claims for vicarious liability based on the conduct of "Wildcard Gym members," Palmer, or other nonparties.  The parties shall bear their own costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.