Filed 9/25/25  Oasis Independent Medical Associates v. Lopez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| OASIS INDEPENDENT MEDICAL ASSOCIATES, INC., | |
| Plaintiff and Respondent, | E082871, E083728 |
| v. | (Super.Ct.No. CVPS2304878) |
| JOB LOPEZ et al., | ORDER MODIFYING OPINION |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |
| _____ | |
| JOB LOPEZ, et al., | |
| Cross-complainants and Appellants, | |
| vs. | |
| OASIS INDEPENDENT MEDICAL ASSOCIATES, et al., | |
| Cross-defendants and Respondents. | |

1

The petition for rehearing filed by appellant on September 12, 2025, is denied. The opinion filed in this matter on August 28, 2025, is modified as follows:

Following the third paragraph on page 15, and prior to the first paragraph on page 16, we insert the following..

Lopez Associates asserts that, under section 16600.5, Oasis's lawsuit is "not protected by section 425.16." Section 16600.5, subdivision (d), provides, "An employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation." Our Supreme Court has concluded that wrongful prosecution claims are not categorically exempt from anti-SLAPP protections. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) Based upon that conclusion by our Supreme Court, it follows that a claim under section 16600.5 would not be exempt from anti-SLAPP protections.

The last full paragraph on page 16, which begins "Filing a lawsuit . . . ," is removed and replaced with the following paragraph:

Lopez Associates assert that filing a lawsuit to enforce an allegedly void noncompete agreement is unlawful. There is not uncontroverted evidence that the exclusivity agreement is void. In Lopez's declaration in opposition to the preliminary injunction, he declared, "On August 27, 2023, Oasis stated that any relationship that it had with me was terminated. I dispute that I had a relationship with Oasis that was subject

2

to termination."  Lopez's denial that he worked for Oasis raises a question as to whether section 16600's per se rule applies.

Except for these modifications, the opinion remains unchanged.  The modifications do not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
Acting P. J.


I concur:


CODRINGTON
J.

3

Filed 8/28/25  Oasis Independent Medical Associates v. Lopez CA4/2 (unmodified opinion)
Opinion following order vacating prior opinion

*See concurring opinion.*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| OASIS INDEPENDENT MEDICAL ASSOCIATES, INC., | |
| Plaintiff and Respondent, | E082871, E083728 |
| v. | (Super.Ct.No. CVPS2304878) |
| JOB LOPEZ et al., | OPINION |
| Defendants and Appellants. | |
| _____ | |
| JOB LOPEZ, et al., | |
| Cross-complainants and Appellants, | |
| vs. | |
| OASIS INDEPENDENT MEDICAL ASSOCIATES, et al., | |
| Cross-defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Manuel Bustamante, Judge.  Affirmed.

Kelly, Trotter & Franzen and David P. Pruett for Defendants, Cross-complainants and Appellants.

Doll Amir & Eley, Michael M. Amir and Paul M. Torres for Plaintiffs, Cross-defendants and Respondents.

This opinion addresses two appeals from one lower court case.  In both appeals, the appellants are Job Lopez (Lopez), CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D.  The first appeal (Court of Appeal case No. E082871) concerns the trial court's grant of a preliminary injunction against Lopez.  The respondent in the first appeal is Oasis Independent Medical Associates, Inc.

The second appeal (Court of Appeal case No. E083728) addresses the trial court's partial grant of an anti-SLAPP motion (Code Civ. Proc., § 425.16) against a cross-complaint that was brought by Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D.  In the second appeal, the respondents are Oasis, Desert Oasis Healthcare, and Heritage Provider Network.  We address the appeals in turn.

## I.      FIRST APPEAL (E082871)

Oasis Independent Medical Associates, Inc. (Oasis) sued Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D., for unfair competition (Bus. & Prof. Code, § 17200)[1], breach of contract, and other causes of action.  At the request of Oasis,

---

[1]  All subsequent statutory references will be to the Business and Professions Code unless otherwise indicated.

2

the trial court issued a preliminary injunction restraining Lopez "from providing any false and/or misleading information to . . . Oasis's members regarding their care" and "from making unsolicited communications to . . . Oasis Medicare Advantage members." Lopez contends that, for a variety of reasons, the trial court erred in issuing the preliminary injunction. We affirm.

## FACTS

### A.   ALLEGED WRONGFUL ACTS

The following facts are taken from Oasis's memorandum in support of its ex parte application for a preliminary injunction. Independent physician associations (IPA) contract with HMOs "to provide . . . health care services to the HMO's members." "The IPA then contracts 'downstream' with numerous physicians to actually provide the medical care to the IPA's enrollees." "Physicians may further contract 'downstream' with other providers." "Oasis is an IPA which contracts with [physicians] and other providers . . . to provide care to . . . Oasis enrollees." Albert Anderson, M.D. (Anderson), had a contract to treat Oasis's members. Lopez was a nurse practitioner who entered into a partnership with Anderson. Due to that partnership, Lopez also treated Oasis's members.

After years of Lopez and Anderson working together with no major issues, Lopez mass mailed a letter to Anderson's Oasis patients claiming that if they followed Lopez to a different practice "with a new primary care doctor (instead of Dr. Anderson), the 'patients will never lose any benefits or services' and that the patients 'will continue enjoying [their] benefits exactly as before.' " Oasis alleged the foregoing claim by

3

Lopez was false because "Oasis has many programs, services (*e.g.*, medication management, cardiac, and pulmonary clinics) and specialists (*e.g.*, oncologists, cardiologists, etc.) who will not be available with [Lopez's new practice]." Oasis further alleged that Lopez's "agents, including insurance brokers, are cold calling . . . Oasis enrollees assigned to Dr. Anderson, and pushing the same false narrative described above." The allegations about Oasis's services being unique to Oasis and unavailable to patients who leave Oasis are supported by the declaration of Melissa Diaz, Oasis's marketing manager.

One of Oasis's former patients declared, "Recently, a woman called me, unsolicited, and told me that she was calling on behalf of . . . Lopez. The woman told me that I needed to change my primary care doctor and that such a change would not impact my ability to continue seeing the other doctors in . . . Oasis'[s] network of doctors. I reluctantly agreed to switch my provider. After thinking about it, however, I called the person back and told her that I did not want to change my primary care doctor from Dr. Anderson and that I wanted to stay with . . . Oasis. The person responded that I could not change back."

In Oasis's complaint, it alleges that it sent Lopez a cease-and-desist letter on July 27, 2023. Oasis further alleged that Lopez's wrongful acts occurred "within the past several months." Oasis's complaint was filed on October 6, 2023, so we infer the alleged wrongful acts occurred in the summer and fall of 2023. Brian Hodgkins, M.D., executive vice president of Oasis's clinical operations, discovered that, within the 45 days prior to his November 2023 declaration, 80 of Anderson's patients left his care.

B.     EX PARTE APPLICATION

Oasis applied ex parte for a temporary restraining order and a preliminary injunction.  Oasis asserted it was likely to prevail on its cause of action for unfair competition (§ 17200).  Oasis asserted Lopez violated "Health & Safety Code § 1360[, which] prevents the use of 'any advertising or solicitation which is untrue or misleading.' "  Oasis contended that Lopez was "deceiving unsuspecting patients" into "switch[ing] health care plans and providers."  Oasis contended its patients would suffer irreparable harm if the injunction were not issued because their health care would be disrupted.

C.     OPPOSITION

In opposing the ex parte application, Lopez asserted that Oasis failed to demonstrate any irreparable harm because monetary relief could cure any damage suffered by Oasis.

D.     REPLY

In Oasis's reply, it highlighted Lopez's failure to refute that he mass-mailed letters containing false information to Oasis's members and that members lost access to their doctors.  As to irreparable harm, Oasis asserted that it "showed [Lopez's] wrongful conduct is causing irreparable harm *to Oasis members*."

E.     RULING

The trial court granted the preliminary injunction restraining Lopez from (1) "providing any false and/or misleading information to . . . Oasis'[s] . . . members regarding their care," (2) advising Oasis's members "that a change in primary care

5

doctors or change in affiliations from . . . Oasis will have no impact on the members'

health care, including but not limited to continued access to specialists"; and

(3) "making unsolicited communications to . . . Oasis Medicare Advantage members

(*i.e.*, cold-calling, letters to patients, home visits)."

The trial court's ruling was primarily based upon its conclusion that Oasis was

likely to prevail on its cause of action for breach of the implied covenant of good faith

and fair dealing arising from a contract between Oasis and Lopez. The contract

required that, as to health maintenance organization (HMO) patients, Lopez would

exclusively work with Oasis's members. The trial court did not expressly address the

element of irreparable harm.

As to Oasis's cause of action for unlawful, unfair, or fraudulent business acts

(§ 17200), the trial court wrote, "Oasis argues, among other things, that NP Lopez's

conduct violates his contractual duties under the Exclusivity Agreement, as well as

several federal and state laws precluding such types of solicitation conduct. Again,

there is no evidence that any of the other Defendants, other than NP Lopez, engaged in

any unlawful solicitation. Thus, . . . Oasis fails to show a probability of prevailing on

the merits on this cause of action as to Dr. Lopez, Dr. C[o]rdova and CoachellaMed."

**DISCUSSION**

A.      FALSE STATEMENTS

Lopez contends the trial court did not make a finding that Lopez made false

statements. Lopez is mistaken. The trial court's explanation of its ruling reads, "Again,

there is no evidence that any of the other Defendants, *other than NP Lopez*, engaged in

6

any unlawful solicitation." (Italics added.)  That sentence reflects a finding that Oasis is likely to prevail on its claim that Lopez engaged in an unlawful business practice (§ 17200) by sending Oasis's members untrue or misleading solicitations (Health & Saf. Code, § 1360).

In Lopez's appellant's reply brief, he asserts that substantial evidence does not support the finding that he made false claims to Oasis's members.  We do not analyze "issues raised for the first time in a reply brief, in the absence of a showing of good cause why such issues were not raised in the opening brief."  (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.)  Lopez does not address the topic of good cause.  Consequently, we do not analyze the substantial evidence issue.

B.    <u>STOLEN INFORMATION</u>

Lopez contends the trial court did not make a finding that he stole patient information.  Although we agree, that is not a basis for reversal.  The preliminary injunction restrains Lopez from "providing any false and/or misleading information to . . . Oasis's members regarding their care."  The focus of the order is on deceptive marketing, not stolen information.  The lack of a finding on a topic not pertinent to the order fails to show that the order is erroneous.

C.    <u>COMMUNICATING WITH PATIENTS</u>

Lopez contends the preliminary injunction prevents him from "communicating with patients regarding their health care, 'including, but not limited to communications regarding treatment options, alternative plans, or other coverage arrangements.' "  Contrary to Lopez's position, he is not so broadly restrained.  The injunction prohibits

7

Lopez "from providing any false and/or misleading information to . . . Oasis's members regarding their care" and from unsolicited marketing communications. The injunction does not bar Lopez from speaking honestly with patients regarding their health when contacted by the patients.

### D. EXCLUSIVITY AGREEMENT

#### 1. *FACTUAL AND PROCEDURAL HISTORY*

Lopez had a partnership with Anderson, who had a contract with Oasis. In Anderson's contract with Oasis, he agreed to limit his HMO patients to Oasis's members. "Oasis did not wish to leave a 'loophole' in its exclusivity arrangement with Dr. Anderson." Therefore, in 2006, Oasis also entered into an exclusivity agreement with Lopez, in which Lopez agreed that, as to HMO patients, Lopez would exclusively work with Oasis's members.

A clause in the exclusivity agreement reads: "At all times relevant and pursuant to the terms and conditions of this Agreement, [Lopez] is, and shall be construed, to be an independent contractor practicing [Lopez's] profession and shall not be deemed to be or construed to be an agent, servant or employee of [Oasis]."

The exclusivity agreement applies "for the full term of [the exclusivity] Agreement and any renewal period." The exclusivity agreement originally had a 15-year term, which would have ended in 2021. In 2017, Oasis and Lopez agreed to extend the exclusivity agreement into 2025.

In Lopez's declaration, he declared, "On August 27, 2023, Oasis stated that any relationship that it had with me was terminated. I dispute that I had a relationship with

Oasis that was subject to termination."  On September 25, 2023, Anderson sent a letter to patients that reads in relevant part, "Although, Job Lopez has decided to leave my practice . . . ."

In Oasis's November 2023 ex parte application for a restraining order, it alleged that the exclusivity "agreement remains valid and ongoing," because it was designed to last the full term of the exclusivity agreement – not merely the term of Lopez's partnership with Anderson. Oasis relied on the exclusivity agreement in asserting that Lopez should be restrained from competing with Oasis. Oasis argued, "Indeed, the requested injunction merely would require Mr. Lopez and Defendants to continue honoring the Exclusivity Agreement and the laws concerning solicitation."

In opposing the request for a preliminary injunction, Lopez asserted that Oasis's act of seeking to enforce the exclusivity agreement was an improper post-termination restraint on employment, violative of section 16600.

The trial court concluded that section 16600 "prohibits employee noncompetition agreements.  There is no evidence that . . . Oasis and . . . Lopez had any employer-employee relationship, such that this section is applicable."  In the trial court's ruling, it found that Oasis had a likelihood of prevailing on its cause of action for breach of the implied covenant of good faith and fair dealing, which was based upon the exclusivity agreement.

### 2. *SECTION 16600*

Under section 16600, subdivision (a), every contract that restrains a person from engaging in their lawful profession is void.  However, not every contract limiting one's

work is void per se. The void per se rule applies "strictly in the context of noncompetition agreements following the termination of employment or the sale of interest in a business." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1159.) In all other contractual relationships, such as "contractual restraints on business operations and commercial dealings," a reasonableness standard is applied to determine whether the contract is void. (*Ibid*; see also *Samuelian v. Life Generations Healthcare, LLC* (2024) 104 Cal.App.5th 331, 350-351.) "[A]n agreement by an . . . independent contractor not to compete with his employer after leaving that employment is void [per se]." (*Bosley Medical Group v. Abramson* (1984) 161 Cal.App.3d 284, 288.)

        3.      *ANALYSIS*

        a.      <u>Allegedly Incorrect</u> <u>Legal Standard</u>

Lopez contends the order granting the preliminary injunction must be reversed because the trial court " 'applie[d] the wrong legal standard[]' " when it concluded that section 16600 was inapplicable. In rejecting Lopez's section 16600 defense, the trial court found, "There is no evidence that . . . Oasis and . . . Lopez had any employer-employee relationship, such that this section is applicable." Because the trial court's rejection had an evidentiary basis, Lopez's contention regarding an incorrect legal standard is misplaced.

        b.      <u>Independent Contractor</u>

Lopez contends the trial court erred in finding section 16600 inapplicable because "the Exclusive Nurse-Practitioner Agreement at issue here, . . . describes an

employment as an independent contractor, within the category of contracts subject to section 16600."

We apply the abuse of discretion standard of review in our analysis of whether the trial court erred in finding Oasis is likely to prevail on the merits at trial. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.)

i.    *Lopez's Evidence and Argument*

Lopez's current assertion that he worked for Oasis as an independent contractor contradicts Lopez's evidence and trial court argument. In Lopez's declaration in support of his opposition to the preliminary injunction, Lopez proclaimed he did not work for Oasis. Specifically, Lopez declared, "On August 27, 2023, Oasis stated that any relationship that it had with me was terminated. I dispute that I had a relationship with Oasis that was subject to termination."

In Lopez's declaration, he went on to explain that he "shared in the ownership of a family practice medical business." Lopez declared, "During the years with Dr. Anderson, because of my ownership interest in the practice, I always received 50% of the capitation income paid to our practice by Oasis." Lopez continued, "In 2016, I was invited to an Oasis event and Dr. Hoffing provided a name tag for me that identified me as a 'Practice Owner.' (Exhibit 1.) Oasis is aware that I am a co-owner of the practice with Dr. Anderson." Lopez's declaration demonstrates that he was a joint owner of the medical practice with Anderson, and the medical practice had a business arrangement with Oasis.

11

In Lopez's memo in opposition to the preliminary injunction, Lopez did not assert that he worked for Oasis as an independent contractor. Rather, Lopez contended, "There is not an enforceable covenant not to compete here. There is no evidence that Oasis sold goodwill of a business to NP Lopez. There is no evidence to suggest that Oasis and NP Lopez were partners or shareholders of a corporation or members of an LLC and that NP Lopez sold any such interest to Oasis."

Given that Lopez's evidence contradicted a finding that he was an independent contractor, and Lopez's argument did not assert he was an independent contractor, the trial court did not abuse its discretion in concluding that Oasis was likely to prevail on the issue.

### ii.    Oasis's Brief

Lopez contends that, on appeal, Oasis concedes that the exclusivity agreement was a contract for Lopez " 'to provide certain medical services as an independent contractor to Desert Oasis'[s] patient members.' "  (Boldface omitted.)

In our reading of the respondent's brief, Oasis is vague regarding its past relationship with Lopez. For example, Oasis asserts, "Appellants' argument that Lopez's status as an independent entrepreneur, where he reaped millions in profits based on a contractual provision that he actively negotiated, is equivalent to an employee working for an employer—such that the *per se* rule . . . applies—is without merit."

Oasis's assertion that Lopez was an "entrepreneur" who "profit[ed]" implies that Lopez was a business owner who had a business arrangement with Oasis, as opposed to

12

an independent contractor earning wages.  Because Oasis's argument can be read as disputing that Lopez worked for Oasis as an independent contractor, Lopez has failed to persuade us that Oasis conceded the issue.

### iii. Conclusion

The trial court found no persuasive evidence of an employment relationship between Lopez and Oasis.  Oasis did not concede that Lopez worked for Oasis as an independent contractor.  In Lopez's evidence and trial court arguments, he rejected any notion that he worked for Oasis.  Accordingly, Lopez has failed to demonstrate that the trial court erred in concluding that section 16600's per se rule did not apply in this case.

### E. CONCLUSION

We have not been presented with an argument demonstrating that the trial court erred in granting the preliminary injunction.  Accordingly, we will affirm the order.

## II. SECOND APPEAL (E083728)

Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D. (collectively, Lopez Associates) cross-complained against Oasis, Desert Oasis Healthcare, and Heritage Provider Network (collectively, Oasis Network).  The trial court granted, in part, Oasis Network's anti-SLAPP motion.  (Code Civ Proc., § 425.16.)  Lopez Associates contend the trial court erred by partially granting the anti-SLAPP motion.  We affirm.

## FACTS

In their first amended cross-complaint (FACC), Lopez Associates sought a judicial declaration that the exclusivity agreement was void under section 16600.  In

13

their second cause of action, Lopez Associates alleged that Oasis's lawsuit, which included a claim for breach of the exclusivity agreement, constituted unfair competition (§ 17200) because the exclusivity agreement is an improper restraint on Lopez practicing his profession.  The following is a quote from Lopez Associates' second cause of action:  "[Oasis's] . . . filing of an action in court to attempt to enforce restraints of trade, so as to suppress competitive employment in California, violate California's unfair competition law and public policy against restraints of trade, Sections 16600 and 17200."

In partially granting the anti-SLAPP motion, the trial court struck:  (1) the entirety of Lopez Associates' second cause of action; (2) in the fourth cause of action, paragraph 73, the portion reading, " 'and attempted enforcement of Exclusivity Contracts with NP Lopez' "; (3) paragraph 24, which reads, " 'Those threats have included threats of entangling competitors in litigation, with cease and desist letters, including threats of injunctions, to deter competitors from contracting with health care providers who were induced to sign cross-defendants' Exclusivity Contract' "; and (4) the portion of paragraph 1 reading, " 'including threats of litigation and commencement of litigation by those cross-complainants in an effort to achieve restraints of health care providers' professions, trades, and business by virtue of cross-defendants' Exclusivity Contracts.' "

**DISCUSSION**

A.      STANDARD OF REVIEW

"To resolve an anti-SLAPP motion, the trial court engages in a two-step inquiry. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from a protected activity. [Citation.] The moving party has the burden of showing that the challenged cause of action arises from a protected activity. [Citation.] Second, if the moving party has carried that burden, the court must decide whether the opposing party has demonstrated a probability of prevailing on the challenged cause of action. [Citation.] 'The trial court's rulings on both issues are reviewed de novo.' " (*City of Oxnard v. Starr* (2023) 88 Cal.App.5th 313, 320.)

B.      PROTECTED ACTIVITY

A protected activity is one arising from an act in furtherance of a person's "right of petition or free speech." (Code Civ. Proc., § 425.16, subd. (b)(1).) That includes "any written or oral statement or writing made before a . . . judicial proceeding" or "under consideration or review by a . . . judicial body." (*Id*. at subds. (e)(1) & (2).)

The portions of the FACC stricken by the trial court all pertain to Oasis's actions in bringing its complaint against Lopez Associates. Oasis's complaint constitutes a writing before a judicial proceeding that is also under consideration by a judicial body. Therefore, the stricken portions of the FACC pertain to the protected activity of Oasis suing Lopez Associates.

15

Lopez Associates contend the exclusivity agreement is void per se under section 16600, as a posttermination noncompete agreement, and suing to enforce a void agreement is not a protected activity. In support of their position, Lopez Associates cite a case from this court, *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711-712.

That case provides: "Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute. [Citations.] But when the defendant's assertedly protected activity may or may not be unlawful, the defendant may invoke the anti-SLAPP statute unless the activity is unlawful as a matter of law. [Citation.] An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful." (*Dwight R. v. Christy B.*, *supra*, 212 Cal.App.4th 697, 711-712.)

Filing a lawsuit is not an unlawful or criminal activity. Lopez Associates assert that filing a lawsuit to enforce an allegedly void noncompete agreement is unlawful. If we accept that premise as true, there is not uncontroverted evidence that the exclusivity agreement is void. In Lopez's declaration in opposition to the preliminary injunction, he declared, "On August 27, 2023, Oasis stated that any relationship that it had with me was terminated. I dispute that I had a relationship with Oasis that was subject to termination." Lopez's denial that he worked for Oasis raises a question as to whether section 16600's per se rule applies.

In Lopez's declaration in opposition to the anti-SLAPP motion, Lopez did not deny having a relationship with Oasis, but he failed to define the relationship, e.g.,

16

employer-employee. For example: "Regarding the events leading to the termination of the contractual relationship with Oasis . . . . By that letter, Oasis stated it could 'terminate the agreement immediately.' [Citation.] And, Oasis stated that unless I did what it told me in its letter that it would terminate its relationship with me . . . ." Lopez did not indicate if he worked for Oasis as an independent contractor or if he had a business arrangement with Oasis as a co-owner of the medical practice with Anderson. As a result, there is not uncontroverted evidence demonstrating that the exclusivity agreement is void, such that it would be unlawful to seek to enforce it. The trial court did not err in finding that Oasis's complaint constitutes a protected activity.

C.     PROBABILITY OF PREVAILING

Lopez Associates, as the cross-complainants, bore the burden of proving a probability of prevailing. (Code Civ. Proc., § 425.16, subd. (b)(1).) In the second cause of action, Lopez Associates alleged that Oasis's initiation of litigation to enforce the exclusivity agreement was an "unfair business practice[] under Sections 16600 and 17200." Because the unfair business practice claim (§ 17200) is based upon section 16600, Lopez Associates must demonstrate a probability of establishing that the exclusivity agreement is either (1) void per se or (2) void under the reasonableness standard. (*Samuelian v. Life Generations Healthcare*, *supra*, 104 Cal.App.5th at pp. 350-351.) Lopez Associates rely solely on the void per se rule and assert that Lopez worked for Oasis as an independent contractor.

In Lopez Associates' opposition to the anti-SLAPP motion, it provided law concerning section 16600 and independent contractors. For example, " '[A]n agreement

17

by an employee or independent contractor not to compete with his employer after leaving that employment is void.' [Citations.]" In terms of evidence, Lopez Associates relied on Lopez's declaration in support of the opposition to the anti-SLAPP motion, which referred to a generic relationship between Lopez and Oasis – it did not identify Lopez as an independent contractor. Given Lopez did not declare himself to be an independent contractor, there is not a probability of Lopez Associates prevailing on the independent contractor/void per se theory. As a result, they have failed to establish a probability of prevailing on their claim that Oasis engaged in an unfair business practice (§ 17200).

D.     CONCLUSION

The trial court did not err in partially granting the anti-SLAPP motion.

**DISPOSITION**

The order granting the preliminary injunction is affirmed. The order partially granting the anti-SLAPP motion is affirmed. In both appeals, respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                          
Acting P. J.

I concur:

CODRINGTON                    
J.

18

[*Oasis Independent Medical Associates, Inc. v. Lopez*, E082871;
*Lopez v. Oasis Independent Medical Associates, Inc.*, E083728]

MENETREZ, J., Concurring.

The preliminary injunction prohibits only false or misleading communications and unsolicited marketing communications. Appellants' arguments concerning Business and Professions Code section 16600 do not show that prohibiting those communications was an abuse of discretion.

The special motion to strike was granted only as to allegations concerning respondents' litigation or prelitigation conduct. That conduct is protected activity under Code of Civil Procedure section 425.16 and is covered by the litigation privilege. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195.) Appellants' arguments concerning Business and Professions Code section 16600 again fail to show error, because even meritless litigation is protected activity and is covered by the litigation privilege.

I therefore concur in the judgment.

MENETREZ      
J.

1